IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

**RICHARD COOEY**
#194-016
Ohio State Penitentiary
878 Coitsville-Hubbard Road
Youngstown, Ohio  44505,

       Plaintiff,

vs.

**TED STRICKLAND, Governor**
State of Ohio
77 South High Street, 30th Floor
Columbus, Ohio  43215,

**TERRY COLLINS, Director**
Ohio Dept. of Rehabilitation & Correction
1050 Freeway Drive North
Columbus, Ohio  43229,

**PHIL KERNS, Warden**
Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio  45699,

CASE NO.   2:08-cv-747

JUDGE FROST

MAGISTRATE JUDGE ABEL

**Plaintiff's Amended Original Complaint for Injunctive and Declaratory Relief, Attorney Fees, and Costs of Suit Under 42 U.S.C. § 1983**

**This is a death penalty case.
Execution scheduled on
 October 14, 2008.**

# COMPLAINT

## I. JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. § 1983 for threatened violations of Plaintiff's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution and Plaintiff's right to be free from violations of his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution.  Plaintiff seeks equitable, injunctive, and declaratory relief.

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, as it arises under the Constitution of the United States; under 28 U.S.C. § 1343(a)(3), as it is brought to redress deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), as it seeks to secure equitable relief under an act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; under 28 U.S.C. § 2201(a), as one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, as one purpose of this action is to secure preliminary and permanent injunctive relief.  This Court has supplemental jurisdiction over any state statutory claim asserted by Plaintiff under 28 U.S.C. § 1367, as the state and federal claims are derived from a common nucleus of operative facts.

3. This Court has venue under 28 U.S.C. § 1391(b)(1) as all Defendants are situated within the State of Ohio and each of them resides within the Southern District of Ohio, and under 28 U.S.C. § 1391(b)(2) as all of the events described herein have, or will, occur within this judicial district.  Defendant Strickland exercises his final authority over the other Defendants in the seat of Ohio's government, located in Franklin County, Ohio; Defendant Collins promulgated the lethal injection execution procedures in Franklin County, Ohio; and Warden

Kerns and the execution team members intend to execute Plaintiff in Scioto County, Ohio, by the method of lethal injection described herein.

## II. THE PARTIES

4. Richard Cooey is a United States citizen and a resident of the State of Ohio. He is currently a death-sentenced inmate in the custody of Defendants, and under the control and supervision of the State of Ohio Department of Rehabilitation and Correction, who have him incarcerated in the Ohio State Penitentiary, in Youngstown, Ohio, under Inmate #194-016. If Mr. Cooey's death sentence is not overturned in another judicial proceeding or through executive clemency, then Defendants will execute him on October 14, 2008. Upon information and belief, it is the intention of Defendants to use the lethal injection methods described in Exhibits A and B to execute him in the death house located at the Southern Ohio Correctional Facility, which the Defendants operate and control.

5. Defendant Ted Strickland is, and at all times relevant was, the Governor of the State of Ohio. He is the final executive authority in the state, statutorily and constitutionally responsible for the execution of all sentences of death in Ohio and the manner in which those sentences are performed. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

6. Defendant Terry Collins is, and at all times relevant was, the Director of the State of Ohio Department of Rehabilitation and Correction (ODRC), a department of the State of Ohio created and maintained under O.R.C. § 5120. O.R.C. § 5120.01 charges and authorizes Defendant Collins to prescribe and direct the promulgation of rules and regulations for the ODRC, including the rules and regulations for the conduct of prison operations and execution

procedures. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

7. Defendant Phil Kerns is, and at all times relevant was, Warden of the Southern Ohio Correctional Facility at Lucasville (SOCF), an ODRC correctional institution that was created and is maintained under O.R.C. § 5120.05, and is where sentences of death are executed in the State of Ohio. Under O.R.C. § 5120.38, Defendant Kerns, as the Warden of SOCF, is charged with management of SOCF and the oversight and conduct of operations there. This includes the oversight of training of personnel and implementation of executions carried out there. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

8. Defendants, at all relevant times, were acting in their official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of state law. Unless preliminarily and permanently enjoined, the Defendants intend to act in their respective official capacities, under the authority of state law, by executing Plaintiff by utilizing lethal injection methods that will violate his constitutional rights.

### III. FACTS SUPPORTING PLAINTIFF'S CLAIMS FOR RELIEF

9. Plaintiff is presently incarcerated at the Ohio State Penitentiary in Youngstown, Ohio (OSP).

10. Plaintiff is scheduled to be executed by lethal injection on October 14, 2008 at 10:00 a.m. at the Southern Ohio Correctional Facility (SOCF).

11. Defendants intend to execute Plaintiff by employing the same means and methods of lethal injection as identified in the July 10, 2006 and October 11, 2006 protocols. (Exs. A, B)

12. Plaintiff alerted undersigned counsel to difficulty in accessing his veins during attempts to draw his blood.  Review of his records demonstrated a potential vein access issue.  Similarly, Plaintiff advised counsel that he currently is receiving medication to treat cluster migraines.

13. After being alerted to this information, Plaintiff provided to Mark J.S. Heath, MD his relevant institutional records as well as the interdisciplinary notes created when Plaintiff faced an execution date in July 2003 (Ex. C).  Plaintiff also provided Dr. Heath with his current height and weight.  [Plaintiff requested his entire ODRC medical record on May 22, 2008.  (Ex. D) To date, Plaintiff has not received those records.  Therefore, Plaintiff could not provide Dr. Heath with additional, current medical records.]

14. Dr. Heath provided Plaintiff with a declaration based on his review of the materials identified within his affidavit, as well as the information he relied on in preparing his February 2008 affidavit in State v. Rivera, Case nos. 04CR065940, 05CR068067 (Lorain C.P.).  (Ex. E)  Dr. Heath's review establishes that venous access during Plaintiff's execution, as a result of his poor veins and morbid obesity, will be difficult, and quite possibly impossible under Ohio's current lethal injection protocol.  Plaintiff's current treatment of cluster migraines could render him tolerant to the first drug administered during Ohio's lethal injection protocol.  In addition, Plaintiff is at a greater risk of anesthesia awareness as result of that same medication.

*Venous access*

15. Plaintiff previously faced an execution date in July of 2003.  He was transferred to SOCF in preparation for his July 2003 execution date. Staff at SOCF evaluated Plaintiff's veins on July 23, 2003 apparently "specifically for the purpose of determining the suitability of [Plaintiff's] veins for IV access for execution."  (Ex. E, p. 2).  Those findings are contained

in an interdisciplinary progress note completed by Mona Parks, RN.  (Exs. D, E)  The notes reveal that Plaintiff advised Parks that "when you start the IV's come 15 min early, I don't have any veins."  (Id.)  The notes went on to indicate that the IV team was informed that Cooey's veins are "sparce" [sic].  (Id.)  The IV team was advised that Plaintiff "has good vein to right hand – smaller on [sic] on left."  (Id.)

16. Plaintiff's attorneys also informed Dr. Heath that Plaintiff indicated that "Mansfield Correctional medical staff encountered problems on two occasions when attempting to find a vein when they were drawing blood."  (Ex. E, p. 2)  Dr. Heath notes that while blood tests were performed that show that it was possible to draw blood, "removal of blood from a vein is, in almost all cases, significantly easier than properly inserting an IV catheter within a vein."  (Id.)

17. One additional fact impacts on Defendants' ability to access Plaintiff's veins for purposes of lethal injection.  Plaintiff's height is 5'7" and his weight is 267 pounds.  (Id.)  His current Body Mass Index (BMI) is 41.8.  (Id.)  Thus, "it appears that Mr. Cooey suffers from morbid obesity, a condition that increases the risk that IV access, either peripheral or central, may be problematic."  (Id.)  In particular, morbidly obese people "often have significant deposits of adipose tissue (fat) overlying their veins, making it difficult or impossible to successfully establish peripheral IV access."  (Id.)  Dr. Heath expressed the concern that "[i]f Mr. Cooey has gained weight since the 2003 [execution date] it is possible that the single 'good' vein on his right hand identified by Ms. Parks may now be obscured."  Upon information and belief, Plaintiff is heavier today than in 2003 when Defendants previously evaluated his veins.

*Tolerance as a result of Topamax treatment*

18. Dr. Heath also expressed concern over medication Plaintiff is currently taking to treat cluster migraines, Topamax (topiramate).  (Ex. E, p. 1)  Topamax, a drug used to treat seizures, "interacts with the GABA neurotransmitter system in the brain."  (Id.)  The GABA neurotransmitter is also involved in the actions of many other depressant/sedative/anesthetic drugs, such as ethanol (alcohol) and barbiturates.  (Id.)  "A person who has been taking any of the substances over time is likely to develop resistance to the effects of other substances that interact with the GABA neurotransmitter system."  (Id. at 1-2)  Resultantly, "Mr. Cooey's ongoing exposure to Topamax may decrease his sensitivity to barbiturates, including thiopental," which is the first drug administered by Defendants during Ohio's lethal injection process.  (Id. at 2)

19. Further, "Topamax also has analgesic (pain reducing) properties, and thus may place Mr. Cooey at increased risk for awareness during the attempted anesthetic component of the lethal injection procedure."  (Ex. E, p. 2)

20. Although a "full dose of thiopental [was] successfully delivered into his circulation" Plaintiff would be deeply anesthetized regardless of his treatment with Topamax, (id.), "it is also likely that his use of Topamax decreases the margin of safety and therefore makes him more vulnerable to the consequences of a partially failed thiopental administration."  (Id.)  In addition, Plaintiff's morbid obesity (weight of 267 pounds) and the "relatively low dose of thiopental used by Ohio compared with other states [Ohio administers two grams of sodium thiopental in contrast to 3 to 5 gram doses found in other states], increases the risk that Mr. Cooey, in particular, would not be adequately anesthetized if he is executed under the current Ohio protocol."  (Id.)

7

*Efforts by Plaintiff to address these issues*

21. In response to this information, and Dr. Heath's declaration, Plaintiff's counsel contacted Defendants' counsel on June 19, 2008.  (Ex. F)  Undersigned counsel identified these problems outlined in the preceding paragraphs and provided Dr. Heath's declaration. Counsel noted that ODRC had yet to provide Plaintiff with his current medical records. Counsel then identified the issues of venous access and tolerance.  Counsel requested that Defendants identify "what alternative means of obtaining venous access the IV team [would] use if it is unable to obtain peripheral vein access" during Plaintiff's lethal injection (ODRC's current lethal injection protocol provides no guidance on how the IV team will gain venous access when peripheral access cannot be achieved.  (Exs. A, B)). Counsel also asked what, "if any, alterations [would be made] to Ohio's lethal injection protocol, including [ ] the dosage of drugs and ascertainment of depth of anesthesia, to ensure that Mr. Cooey will be adequately anesthetized during any execution."  (ODRC's current lethal injection protocol does not provide for consideration of issues of tolerance, including changes in the dosage of sodium thiopental or additional evaluations to ensure proper anesthesia. (Id.))  As of the filing of this pleading, the only response Plaintiff has received is a letter from Defendants' counsel indicating that Exhibit F had been provided to Defendants.  (Ex.  G)

*Conclusions*

22. The State of Ohio has scheduled Plaintiff's execution for October 14, 2008.   There is presently no assurance that the manner in which ODRC will obtain access to Plaintiff's veins will be humane.  Moreover, there is presently no assurance that Defendants will ensure that Plaintiff is properly anesthetized during his scheduled execution.  Plaintiff has raised issues, which Defendants are not addressing, that raise a "substantial risk of serious harm."  Baze v.

8

Rees, __ U.S. __, 128 S. Ct. 1520, 1532 (2008).  Moreover, because of Defendants' failure to detail the specifics of how it will address the issues raised by Cooey, he is unable to offer a remedial alternative to this Court.

23. If the "substantial risk of serious harm" associated with an execution by lethal injection in the Plaintiff's case may be easily remedied or mitigated by employing alternative methods or altering the procedures employed in the execution process, Defendants' failure to take these steps violates Plaintiff's rights under the United States Constitution. Defendants have failed to even identify how they plan to address potential problems in Plaintiff's lethal injection execution, despite the fact his scheduled execution is less than three months away (October 14, 2008).  Defendants' refusal to identify and describe the procedure and personnel that will be employed during Plaintiff's execution itself raises issues of constitutional importance. Plaintiff is precluded from knowing any meaningful information about any deviation from Ohio's lethal injection protocol that will be used during his execution.

24. Any means and methods devised by Defendants to address the problems Plaintiff raised in Exhibits E and F may not comport with the mandates of the Constitution and O.R.C. § 2949.22.  Foreseeable alternatives include a cut-down or a central line, but there is no "meaningful articulated plan that takes this issue into account."  (See Ex. E, p. 3) Defendants' failure to describe the procedures they intend to put in place to address these issues means that Plaintiff cannot evaluate them.  Similarly, this Court cannot make that evaluation.  "By dint of its failure to plan, the ODRC is planning to fail, and at this time appears to intend to embark down the same path that led to the problematic execution of Mr. Clark."  (Id.)  Ohio's current protocol's wholesale failure to address issues of venous access and/or drug tolerance means that this Court cannot be confident that Defendants are taking all

necessary and appropriate steps to minimize the known risks specific to Plaintiff, that there is a "substantial risk of serious harm." Baze, __ U.S. at __, 128 S. Ct. at 1532.

25. Where, as here, Plaintiff has demonstrated the existence of genuine concerns about he humaneness of the execution procedure, this Court cannot condone the risk of allowing Plaintiff's execution without assuring itself that the constitutional prohibitions against the infliction of "unnecessary pain in the execution of the death sentence" will be honored. Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 (1947).

26. Where, as here, Plaintiff has demonstrated the existence of genuine concerns about whether Ohio's lethal injection protocol "will quickly and painlessly cause death," O.R.C. § 2949.22, this Court cannot condone the risk of allowing Plaintiff's execution without assuring itself that Plaintiff's due process interest in O.R.C. § 2949.22 will be honored.

27. Failure to provide injunctive relief will result in irreparable harm—the Defendants will execute Plaintiff under Ohio's current lethal injection protocol, which does not consider the venous access issue or Plaintiff's potential tolerance to sodium thiopental. Those failures will subject Plaintiff, as described herein, to a substantial risk of serious harm. Baze, __ U.S. at __, 128 S. Ct. at 1532.

### FIRST CLAIM

28. Plaintiff has the right under the Eighth Amendment, as applied to the states through the Fourteenth Amendment, to be free from cruel and unusual punishment.

29. The Defendants' inactions—failing to devise (and disclose) deviations from Ohio's lethal injection protocol to address the unique issues raised by Plaintiff's physical and medical condition—will result in the deprivation of Plaintiff's rights as guaranteed by the Eighth Amendment.

## SECOND CLAIM

30. O.R.C. § 2949.22 authorizes Defendants to execute Plaintiff by lethal injection. It provides that "(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death."

31. The use of "shall" in O.R.C. § 2949.22, "when qualifying a state's duty to provide a quick and painless death signifies that the duty is mandatory." State v. Rivera, Case No. 04CR065940, Judgment Entry at p. 5 (Lorain C.P. June 10, 2008) (Ex. H). This statutory language "demands avoidance of any unnecessary risk of pain, and as well, any unnecessary expectation by the condemned person that his execution may be agonizing, or excruciatingly painful." Id. at 7.

32. This duty's mandatory nature creates "a property interest…in the benefit conferred upon the individual." Id. (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). See also Wolf v. McDonnell, 418 U.S. 539, 557 (1974). This right outweighs any State interest in a "quick" execution, if such an interest exists. Rivera, Case No. 04CR065940, Judgment Entry at p. 6 (Ex. H).

33. The Defendants' inactions—failing to devise and disclose deviations from Ohio's lethal injection protocol to address the individual issues raised by Plaintiff's physical and medical condition will result in the deprivation of Plaintiff's Fourteenth Amendment property interest in the benefit of a "painless" death assigned by O.R.C. § 2949.22. See id. at p. 5.

34. If Defendants execute Plaintiff under their current lethal injection protocol, without adjusting it to address Plaintiff's individual, current medical conditions, Defendants will violate

11

Plaintiff's constitutional right to due process under the Fourteenth Amendment of the United States Constitution.  <u>See</u> <u>id.</u> at p. 6-7.

**PRAYER FOR RELIEF**

Plaintiff requests that this Court provide him with the following relief:

A. Grant him injunctive relief by granting a permanent injunction barring Defendants from executing Plaintiff under Ohio's current lethal injection as it fails to provide for, or identify an alternative mode of venous access and/or fails to address issues of potential drug tolerance.  This order is necessary to prevent Defendants from violating Plaintiff's federal constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.

B. Enter an order that directs the Defendants to provide Plaintiff with any alterations it plans to make to Ohio's current lethal injection protocol concerning the two issues raised by Plaintiff—venous access and tolerance.

C. Enter an order directing Defendants to promulgate a protocol which addresses venous access and comports with the Eighth Amendment and O.R.C. § 2949.22.

D. Enter an order directing Defendants to promulgate a protocol to address potential drug interactions (i.e. tolerance) with sodium thiopental that comports with the Eighth Amendment and O.R.C. § 2949.22.

E. Enter an order that provides for attorney's fees and costs of litigation under Title 28 of the Federal Code and 42 U.S.C. § 1988.

F. Enter an order granting such further relief as this Court deems just and proper.

                                                Respectfully submitted,

                                                Office of the Ohio Public Defender

        By: /s/Gregory W. Meyers_____
Gregory W. Meyers (0014887)
Senior Assistant Public Defender
gregory.meyers@opd.state.oh.us


By: /s/Kelly L. Culshaw Schneider_____
Kelly L. Culshaw Schneider (0066394)
Supervisor, Death Penalty Division
Kelly.Schneider@opd.ohio.gov
**Counsel of Record**

By /s/ Kimberly S. Rigby_____
Kimberly S. Rigby (0078245)
Assistant State Public Defender
Kim.Rigby@opd.ohio.gov

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Phone:   (614) 466-5394
Facsimile:  (614) 644-0708

Counsel For Richard Cooey

281936