In the United States District Court
for Southern District of Ohio, Eastern Division

**RICHARD COOEY**
#194-016
Ohio State Penitentiary                                    CASE NO.      2:08-cv-747
878 Coitsville-Hubbard Road
Youngstown, Ohio  44505,
                                                          JUDGE FROST
                        Plaintiff,

                                                          MAGISTRATE JUDGE ABEL

vs.

**TED STRICKLAND, Governor**
State of Ohio
77 South High Street, 30th Floor
Columbus, Ohio  43215,

**TERRY COLLINS, Director**
Ohio Dept. of Rehabilitation & Correction        **This is a death penalty case.**
1050 Freeway Drive North                          **Execution scheduled on**
Columbus, Ohio  43229,                            **October 14, 2008.**

**PHIL KERNS, Warden**
Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio  45699

                        Defendants.

---

### Richard Cooey's Motion Opposing Defendants' Motion to Dismiss

---

On September 9, 2008, Defendants moved to dismiss the present lawsuit.  Defendants claim

that Richard Cooey (Cooey) has caused the medical conditions upon which he relies to contest his

execution.  Further, Defendants claim that Cooey's suit is barred by the applicable statute of

limitations.  Both assertions are not well-founded.  Instead, Defendants' arguments are an effort to

avoid the real issue, that Defendants' "one size fits all" protocol fails to comply with the Eighth

1

Amendment and the Ohio Revised Code.   Cooey's reasons opposing Defendants' request are outlined in more detail in the attached Memorandum in Support.

Respectfully submitted,

OFFICE OF THE
OHIO PUBLIC DEFENDER

By: /s/Gregory W. Meyers
Gregory W. Meyers (0014887)
Senior Assistant Public Defender
Greg.Meyers@opd.ohio.gov

By: /s/Kelly L. Schneider
Kelly L. Schneider (0066394)
Supervisor, Death Penalty Division
Kelly.Schneider@opd.ohio.gov
**Counsel of Record**

By: /s/ Kimberly S. Rigby
Kimberly S. Rigby (0078245)
Assistant State Public Defender
Kim.Rigby@opd.ohio.gov

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Phone:  (614) 466-5394
Facsimile:  (614) 644-0708

Counsel for Richard Cooey

**Memorandum in Support**

## I.  Defendants obligated to craft protocol that comports with Constitution & Revised Code

Defendants would have this Court dismiss Cooey's suit because he "has eaten and medicated himself into a 'new' claim."  (Dkt. 11, p. 3)  Defendants continue, "[t]his would invite plaintiffs to engage in behavior that is potentially detrimental to them in the hopes of reviving their time-barred claims."  (Id.)  Defendants' argument invites this Court to shift blame to Cooey for Defendants' constitutionally deficient execution protocol.  The constitutional responsibility is Defendants' alone:

- Cooey is not responsible for the fact that Defendants' executioners detected poor peripheral veins when they prepared to execute him in 2003;

- Cooey is not responsible for the that fact Defendants restrict him to prison food and commissary junk food and deny him adequate exercise[1];

- Cooey is not responsible for the medication Defendants' doctors prescribed him;

- Cooey is not responsible for Defendants' failure to craft a constitutional protocol that provides for consideration of the individual inmate the State intends to execute.

While it might grab headlines and make for the good butt of a joke, a fat man has the same right to a constitutional and lawful execution as does a thin man.  Regardless of why vein access may be problematic, or why an anesthetic may not have its intended effect, it is the Defendants' obligation to craft a protocol that comports with the Eighth Amendment and the Ohio Revised Code.  There are 184 men and women on Ohio's death row.  Defendants' intransigence invites more lawsuits as long as Defendants blindly embrace their "one size fits all" protocol.  If Defendants do not prescribe the same type and dosage of medication to all inmates with heart problems or cancer, then why do they think the same drugs administered in the same way will have the same effect for every condemned inmate?

Defendants know there are problems with their protocol with respect to vein access; by all accounts, Ohio leads the nation in botched executions.  As a result, Defendants are well-aware that their existing protocol does not provide for the appropriate procedures for accessing the condemned's veins.  This was evidenced in Joe Clark's execution—the Defendants encountered problems accessing his veins during the course of the execution.  (See Dkt. 2, para. 24 and Ex. E attached thereto; Dkt. 8, p. 6)  Despite the Defendants' subsequent enactment of two new protocols, Defendants again experienced problems accessing Christopher Newton's veins during his execution. (See Dkt. 8, p. 7 and Ex. 1 attached thereto)

---

[1] Until recently, Cooey was housed in the Supermax portion of the Ohio State Penitentiary, confined to a cell 23-hours a day.

Cooey initiated this lawsuit to require Defendants to address, prior to his execution, the problems experienced by Clark and Newton.  On June 19, 2008, Cooey placed Defendants on notice as to the physical conditions unique to him that increase the likelihood that Defendants will, once again, experience vein access problems, as well as problems with the drugs that they use in the execution procedure.  (See Dkt. 2, para. 21 and Ex. F attached thereto)  Defendants have never responded to Cooey concerning these issues.  Defendants' failure to address these issues, after Cooey placed them on notice as to his unique medical conditions, borders on unconstitutional, deliberate indifference.  Nelson v. Campbell, 541 U.S. 637, 645 (2004) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment").

## II.  Cooey did not create the problems with Defendants' protocol

Cooey has a history of compromised veins.  (See Dkt. 2, paras. 15-17 and Exs. D and E attached thereto)  His weight only creates a possibility that his compromised veins may be even more difficult to access.  (See Dkt. 2, para. 17)  Consequently, it is not Cooey's eating that has caused a potential problem with his execution, but the Defendants' failure to enact a protocol that enables it to execute an individual with compromised veins in a manner that comports with the Eighth Amendment and the Ohio Revised Code.  Moreover, how Cooey came to his present condition is irrelevant to the inquiry—the United States Supreme Court has concluded that regardless of how the condition arose, all inmates are entitled to an execution that comports with the constitution.  Cf. Nelson v. Campbell, 541 U.S. 637, 640 (2004) (allowing petitioner's § 1983 lawsuit to proceed despite the fact that he caused his "severely compromised peripheral veins, which are inaccessible by standard techniques for gaining intravenous access, such as a needle" through "years of drug abuse").

4

Defendants' arguments concerning Cooey's migraines fare no better. Instead of claiming that Cooey has manufactured his migraines, as Defendants did with his compromised veins, Defendants fault Cooey for the medication that he is taking to relieve the pain from his migraines. But Cooey has no say in the drug that he is taking for the migraines. It was Defendants' employees, trained medical personnel at the Ohio State Penitentiary, who selected the proper course of treatment. Defendants' contention that DRC is not "force-feeding or medicating" Cooey is nothing short of offensive. (Dkt. 11, p. 3) Defendants would have Cooey forego medical treatment recommended by its own employees rather than adjust their protocol to comport with the Constitution and the Ohio Revised Code. Would Defendants recommend Cooey stop seizure medication, diabetes treatment, heart medication?

In addition, Defendants have yet to disclose Cooey's current medical records, which he asked for on May 22, 2008. (See Dkt. 2, para. 13 and Ex. D attached thereto) Resultantly, Defendants have precluded Cooey from fully developing the evidence concerning the manner in which Ohio's "one size fits all" lethal injection protocol will cause Cooey pain and suffering. Cooey's medical condition, like all individuals, is constantly evolving. Based on Cooey's current medical condition, which is unavailable to counsel, the risks posed to Cooey could be more serious than even he knows.

### III. This litigation is not barred by the statute of limitations

Defendants also argue that Cooey's suit is barred by the statute of limitations as interpreted by the Sixth Circuit in Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007). Defendants fail to recognize that Cooey's challenge in the present case is much different than his earlier challenge, and is therefore not barred by the Sixth Circuit holding in Cooey.

**A.  Cooey's present challenge is to an un-announced execution procedure**

Cooey's prior litigation involved Defendants' protocol as applied to all inmates on Ohio's death row. It was premised upon an individual not having any special physical or medical conditions. As is now apparent, Cooey suffers from atypical physical or medical conditions.  He suffers from compromised veins. In addition, he is taking medication that may affect the drugs that Defendants plan to administer to him during his execution.

When it resolved the initial litigation, the Sixth Circuit found, as early as 1991, that Ohio's death row inmates had sufficient information to raise challenges to Ohio's lethal injection procedures.  Id. at 422.  This is not the situation for an individual that suffers from the atypical conditions that Cooey suffers.  Defendants' lethal injection protocol has never contained a "cut down" procedure (or any alternative peripheral-vein IV placement) for those individuals who have compromised veins.  Defendants' lethal injection procedures have never contained a provision or procedure for those individuals who may not be rendered sufficiently unconscious by the administration of sodium thiopental.  Defendants still have not indicated (even now with less than a month until the scheduled execution) how they intend to gain venous access if Cooey's peripheral veins are inaccessible.

**B.  The present litigation, based on atypical medical conditions, raises different challenges**

Defendants ask this Court to dismiss this litigation for the same reason that the Sixth Circuit disposed of Cooey's frontal attack on Ohio's lethal injection lawsuit in Cooey.  (Dkt. 11, p. 2) Defendants assert that the two suits state the same claim.  (Id.)  While the suits are similar, they are not identical.  Cooey is not arguing that Ohio's lethal injection protocol is unconstitutional on its face, as he argued in his first suit.  Rather, he is arguing that, as applied to him, and as a result of his atypical medical conditions, Defendants' current lethal injection protocol will result in an inhumane execution violating both the Eighth Amendment and the Ohio Revised Code.

Defendants also argue that Cooey's Topamax-related claim is identical to the claim that he raised in his prior appeal. Defendants argue that Cooey's current argument is an "extension" of his earlier argument that "if the first drug in the protocol was improperly administered, there was a risk that he might suffer pain or discomfort." (Dkt. 11, p. 5) Cooey's claim, however, is not "contingent upon maladministration." (See id.) Rather, Topamax itself places him at risk for an execution violative of the Eighth Amendment and the Ohio Revised Code. (See Dkt. 2, para. 18) Resultantly, "Mr. Cooey's ongoing exposure to Topamax may decrease his sensitivity to barbiturates, including thiopental," which is the first drug administered by Defendants during Ohio's lethal injection process. (Id. at 2)"); id. at para. 19 ("Further, "Topamax also has analgesic (pain reducing) properties, and thus may place Mr. Cooey at increased risk for awareness during the attempted anesthetic component of the lethal injection procedure. (Ex. E, p. 2)").

Any death-sentenced individual could file the first suit filed by Cooey. This is evidenced by the numerous inmates who intervened in that suit, and who continue to remain as litigants in that suit. The present suit, however, only Richard Cooey could file because he relies exclusively on his atypical medical conditions.

### Conclusion

This Court should deny Defendants' motion to dismiss and grant Cooey's requested preliminary injunction. In addition, this Court should order the release of Cooey's medical records in order to allow full assessment and review of Cooey's claims.

Respectfully submitted,

OFFICE OF THE
OHIO PUBLIC DEFENDER

By: /s/Gregory W. Meyers
Gregory W. Meyers (0014887)
Senior Assistant Public Defender
Greg.Meyers@opd.ohio.gov

By: /s/Kelly L. Schneider
Kelly L. Schneider (0066394)
Supervisor, Death Penalty Division
Kelly.Schneider@opd.ohio.gov
**Counsel of Record**

By: /s/ Kimberly S. Rigby
Kimberly S. Rigby (0078245)
Assistant State Public Defender
Kim.Rigby@opd.ohio.gov

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Phone:   (614) 466-5394
Facsimile:  (614) 644-0708

Counsel for Richard Cooey

### Certificate of Service

I hereby certify that the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties.

By: /s/Kelly L. Schneider
Kelly L. Schneider (0066394)
Supervisor, Death Penalty Division
Kelly.Schneider@opd.ohio.gov
**Counsel of Record**

286261