# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RICHARD COOEY, et al.,**

    **Plaintiff,**

    v.                                     Case No. 2:04-cv-1156
                                                  JUDGE GREGORY L. FROST
**TED STRICKLAND, et al.,**           Magistrate Judge Mark R. Abel

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Dismiss (Doc. # 279), Plaintiff Jeffrey Hill's memorandum in opposition (Doc. # 317), and Defendants' reply memorandum (Doc. # 330). For the reasons that follow, this Court finds the motion well taken.

### I. Background

On March 2, 2007, the Sixth Circuit issued the decision of *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007), that, among other things, directed this Court to dismiss Plaintiff Richard Cooey's 42 U.S.C. § 1983 complaint with prejudice as barred by the statute of limitations. Pursuant to the June 12, 2008 mandate, which this Court finally received on July 3, 2008 (Doc. # 276), this Court issued a July 7, 2008 order that dismissed Plaintiff Richard Cooey's § 1983 complaint with prejudice as time-barred, denied without prejudice a premature motion to dismiss that Defendants had filed on June 13, 2008, and directed Defendants to file any motions to dismiss other intervenor-plaintiffs, addressing specifically whether any other complaints were untimely under the statute-of-limitations ruling that the Sixth Circuit had announced. (Doc. # 277.)

In *Cooey v. Strickland*, the Sixth Circuit reversed the judgment of this Court that Richard

Cooey had timely filed his 42 U.S.C. § 1983 complaint challenging multiple facets of the lethal injection protocol by which the State of Ohio intended to execute him. In so doing, the Sixth Circuit remarked that the two-year statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred. *Cooey*, 479 F.3d at 416. The Sixth Circuit went on to announce that, "since the 'date' the lethal injection protocol is imposed is infeasible, it stands to reason that the next most appropriate accrual date should mirror that found in the AEDPA: upon conclusion of direct review in the state court or the expiration of time for seeking such review." *Id*. at 421-22. Thus, the Sixth Circuit held that such claims begin to accrue upon conclusion of direct review in the state courts *and* when the plaintiff knows or has reason to know about the act providing the basis of his or her injury. As to that latter condition--when the plaintiff knows or has reason to know about the act providing the basis of his injury--the Sixth Circuit offered several possible dates: either when Ohio adopted lethal injection as a method of execution in 1993 or when Ohio made it the exclusive method of execution in 2001. *Id*. at 422. The Sixth Circuit did not resolve that question "because even under the later date, 2001, Cooey's claim exceeds the two-year statute of limitations deadline because his claim was not filed until December 8, 2004." *Id*.

Seizing on the statute of limitations loosely defined by the Sixth Circuit in *Cooey*, Defendants now argue that Intervenor-Plaintiff Hill's § 1983 complaint is untimely. Defendants point out that the Sixth Circuit determined that a two-year statute of limitations applied to § 1983 claims and that the cause of action accrues with the event that should have alerted the typical lay person to protect his or her rights. In so holding, according to Defendants, "[t]he Sixth Circuit explicitly rejected Cooey's contention that his claim did not accrue until he had actual and

2

detailed knowledge of Ohio's procedures for executing him" and concluded that his claim accrued at the latest when Cooey knew or should have known about the protocol, based on reasonable inquiry. (Doc. # 279 at 15.) The Sixth Circuit appears to have defined that "event" as December 2001 at the latest, when Ohio made lethal injection its exclusive method of execution and information about the protocol was available upon request. According to Defendants, "[t]he Sixth Circuit then held generally that for the purposes of the two-year statute of limitations, a prisoner's claim that his execution will be carried out in violation of the Eighth Amendment accrues upon conclusion in state court of the direct review of the prisoner's conviction and sentence, or the expiration of the time for seeking such review." *Id*.

Against this backdrop, Defendants offer the following relevant dates. Hill was convicted and sentenced to death in 1992. The Ohio Court of Appeals affirmed the judgment against him in 1993, the Ohio Supreme Court affirmed the Ohio Court of Appeals' decision in 1995, and the United States Supreme Court denied *certiorari* in 1996. Hill's unsuccessful efforts to obtain postconviction relief concluded in 1998. Hill then filed a motion to intervene in the above-styled action on December 11, 2005, which this Court granted on January 9, 2006. On April 28, 2006, this Court issued an order granting Hill's April 14, 2006 motion for a preliminary injunction staying his execution.

The crux of Defendants' argument is that because Hill's direct appeal concluded before Ohio mandated lethal injection as its exclusive method of execution in December 2001, and because a condemned prisoner in Ohio had ample information to alert him or her to a potential Eighth Amendment violation by that time, "Hill could and should have brought his claim *at the latest* in December of 2001[.]" (Doc. # 279, at 2.) Under Defendants' interpretation of the

3

statute of limitations, Hill's December 11, 2004 motion to intervene was three years late.[1]

Hill offers several arguments in response. First, Hill argues that the Sixth Circuit's *Cooey v. Strickland* decision is not binding on him. Second, Hill asserts that the Sixth Circuit in *Cooey* essentially adopted the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1) and that under that statute of limitations, his complaint is actually timely pursuant to three alternative accrual dates set forth in §§ 2244(d)(1)(B)-(D). Hill's third argument is that even assuming his complaint is somehow untimely, he is entitled to equitable tolling. Fourth, Hill argues that he is entitled to conduct factual development to prove that his complaint is not time-barred. Finally, Hill argues that the Sixth Circuit's *Cooey* decision was wrongly decided.

## II. Discussion

### A. Standard Involved

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether Hill has set forth claims upon which this Court may grant relief. Under the United States Supreme Court's recent articulation of the analytic standard involved in applying this rule, this Court must construe the amended complaint in favor of Hill, accept the factual allegations contained in his complaint as true, and determine whether the factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to

---

[1] This Court reads the Sixth Circuit's statute-of-limitations ruling as stating that December 2001, at the latest, was the date on which a prisoner's claim began to accrue, not the date on which a prisoner should have filed.

relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." *Id.* (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485 (6th Cir. 1990)). A complaint that presents only a time-barred claim is properly dismissed under Rule 12(b)(6). *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008).

**B. Analysis**

**1. Whether *Cooey v. Strickland* is binding on Hill.**

Hill argues that the *Cooey* decision is not binding on him because Hill was not a party to the Sixth Circuit's decision, because Hill will not be executed under the version of the protocol that Cooey challenged, because the law-of-the-case doctrine does not apply to make *Cooey* binding on Hill, and because *Cooey*'s new rule of law cannot be retroactively applied to Hill. All of Hill's arguments in this regard are unsuccessful.

Hill seeks to challenge via 42 U.S.C. § 1983 multiple facets of the lethal injection protocol by which Ohio intends to execute him. In *Cooey v. Strickland*, the Sixth Circuit confirmed that a two-year statute of limitations applies to such complaints and clarified when those claims begin to accrue. *Cooey*, 479 F.3d at 416-19. The fact, as Hill argues, that "the government did not appeal the adverse decisions of this Court" (Doc. # 317, at 7) permitting Hill to intervene and granting him a preliminary injection staying his execution in no way exempts

Hill from the statute of limitations that the Sixth Circuit set forth in *Cooey* as to method-of-execution claims such as that advanced by Hill. Hill's argument, extended to its illogical end, would mean that no rule of law would apply to any litigant unless it was expressly announced in that litigant's case. Hill has not cited, and this Court is not aware of, any authority supporting such an argument.

Equally untenable is Hill's argument that *Cooey* is not binding on him because he will be executed under a different protocol than the earlier protocol that Cooey challenged. Hill argues that he grieved within the administrative process and challenges in this lawsuit the execution protocol adopted by Defendants on July 10, 2006, and that Cooey challenged "a much earlier protocol." (Doc. # 317 at 7.) The Sixth Circuit has already rejected that argument. Contrary to Hill's suggestion, the "protocol adopted by the defendants on July 10, 2006" actually was squarely before the Sixth Circuit in the *Cooey* appeal. *Id*. The Sixth Circuit expressly noted that the parties had submitted "supplemental briefs discussing the impact of recent changes in Ohio's lethal injection protocol on the issues pending before this Court." *Cooey*, 479 F.3d at 415. The Sixth Circuit went on to describe those "five recommendations and process changes[.]" *Id*. at 423 (internal quotation marks omitted). Apparently nothing about that version of the protocol--or, more precisely, the slight changes that were made in 2006 to the protocol at the heart of Cooey and Hill's challenges--was significant enough in the Sixth Circuit's view to alter its determination that Cooey's claim began to accrue when he was capable of discovering the injury, which in the Sixth Circuit's view was, at the very latest, December 2001 when Ohio made

lethal injection its exclusive method of execution.[2]  *Id*. at 422.

Thus, to the extent that Hill is arguing that his claim did not begin to accrue until July 2006, his argument is foreclosed by the Sixth Circuit.  Further, any argument by Hill that *Cooey* is somehow not binding on him because he is challenging a different protocol than that challenged by Cooey is disingenuous.  That certainly was not Hill's position when he sought leave to intervene in this action, asserting that his Eighth Amendment claim involved "precisely the same issues of law and fact" presented in Cooey's action (Doc. # 29, at 1), that he was

---

[2]  The five "recommendations and process changes" were: (1) the removal of time deadlines that previously dictated that executions begin by a certain hour and be completed within a narrow time frame; (2) a requirement that prisoners be given more in-depth medical examinations prior to their executions; (3) a requirement that correctional personnel make every effort to obtain two sites for heparin locks before proceeding to the execution chambers; (4) replacement of "high pressure" saline injections with a "low pressure" drip of saline to keep the line open and confirm its ongoing viability; and (5) a requirement that correctional personnel observe each inmate's arms and check for signs of intravenous incontinence while the drugs are being administered.  *Cooey*, 479 F.3d at 424.  Although attention has been unduly focused on Cooey's challenge to the specifics of the Ohio's three-drug protocol, Cooey's complaint also challenges facets of the lethal injection execution process beyond the three-drug protocol, including but not limited to, the adequacy of the training of execution-team personnel, the appropriateness of the equipment and methods to be used during executions, the adequacy of the information provided by the Ohio Department of Rehabilitation and Correction about the execution protocol, the adequacy of procedures governing the preparation of the drugs, the existence of provisions for responding to unanticipated problems or undue suffering by the inmate, and the lack of equipment or qualified personnel to monitor the inmate's vital signs during execution.  (Doc. # 2.)

Between the time that the Sixth Circuit decided *Cooey v. Strickland* and the time that the Sixth Circuit issued the *Cooey* mandate, the Supreme Court decided *Baze v. Rees*, 128 S.Ct. 1520 (2008).  *Baze* made clear that, in viewing a lethal injection protocol to determine whether it comports with the Constitution, a court must examine multiple aspects of the protocol, not just the drugs that are administered.  The fact that the Sixth Circuit issued the *Cooey* mandate even after the Supreme Court decided *Baze* signals that the Sixth Circuit did not view the changes that were made to Ohio's protocol in July 2006--changes that did not relate to the three drugs that are administered--as significant enough to preclude its determination that Cooey and similarly-situated prisoners knew or could have known of the facts giving rise to their claims in December 2001 at the latest.

7

asserting "precisely the same Eighth Amendment claim asserted by Mr. Cooey" in this action (*Id*. at 2), and that"[b]oth he and Mr. Cooey are to be executed under the state of Ohio's official policy of death by lethal injection" (*Id*. at 3).

Apparently conceding that *Cooey*'s statute of limitations ruling is the law of the case in which he is a plaintiff, Hill nonetheless argues that the law-of-the-case doctrine does not make *Cooey* binding on him. Hill asserts that the doctrine is inapplicable when there is new evidence, a subsequent contrary view of the law by the controlling authority, or where the earlier decision is clearly erroneous and would work a manifest injustice. Hill's arguments miss the mark. None of the "exceptional circumstances" offered by Hill exist in this instance to permit this Court to exercise its discretion not to abide by the law of the case doctrine.

Citing a June 10, 2008 decision by Lorain County Common Pleas Court Judge James M. Burge, Hill argues that "[t]here is now new law with respect to this issue." (Doc. # 317, at 8.) In *State v. Rivera*, Judge Burge found that Ohio's execution procedure does not provide for a quick and painless death as required by state law and the Fourteenth Amendment to the United States Constitution. Without expressing any opinion as to the soundness of any aspect of Judge Burge's ruling, this Court notes simply that it is bound by the Court of Appeals for the Sixth Circuit and the Supreme Court of the United States, not the Lorain County Common Pleas Court. Hill attempts to evade this bedrock principle by noting that "federal courts have recognized that state courts provide controlling interpretations as to their own statutes." (Doc. # 317, at 8.) Hill's argument in this regard fails because he relies on federal habeas corpus cases to support it

8

(Doc. # 317, at 8 n.5) and this is not a federal habeas corpus case.[3]  Further, even assuming this Court were free to ignore the ruling of the Sixth Circuit in *Cooey v. Strickland* in order to follow the ruling of Judge Burge in *State v. Rivera*, Judge Burge's decision does not constitute a "subsequent contrary view of the law" in this instance because it in no way addressed the statute of limitations applicable to a method-of-execution challenge brought pursuant to 42 U.S.C. §1983.  In other words, even if Judge Burge is wholly correct, § 1983 cannot be the mechanism by which Hill can assert his constitutional claim.

Nor is this Court persuaded by Hill's argument that the law of the case doctrine does not require it to apply the Sixth Circuit's *Cooey* decision to him because he has new evidence.  Hill reasons:

> Dr. Mark Heath, a qualified medical practitioner has now found Ohio's lethal injection infirm.  Heath's earlier opinions were not based on an understanding of the protocols, which had remained obscured under the cloak of administrative obfuscation.

(Doc. # 317, at 8.)  Hill's argument relies on a factual assertion that the Sixth Circuit has explicitly rejected--namely, that Hill and similarly-situated inmates did not have sufficient knowledge of the facts giving rise to their complaint at the very latest in December 2001.  Hill's argument that Dr. Heath gleaned new information and additional facts by virtue of the *State v. Rivera* litigation is another spin on his argument that the July 2006 changes to Ohio's lethal injection protocol prevented him from filing his method-of-execution challenge sooner than he

---

[3] The Sixth Circuit's unfortunate remark in *Cooey* that this case "falls at the margins of habeas," 479 F.3d at 412 (internal quotation marks and citations omitted), is not a blanket invitation to conflate habeas corpus principles at will, including the well established, but unique to habeas corpus, principle that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

9

did. This Court has already considered and rejected that argument. Thus, none of the "exceptional circumstances" offered by Hill exist in this instance to permit this Court to exercise its discretion not to abide by the law of the case doctrine, which requires that the Court dismiss Hill's complaint with prejudice as time-barred.

A third argument offered by Hill for why *Cooey v. Strickland* is not binding on him is that "[t]he decision in *Cooey* is a new rule of law and cannot be applied retroactively." (Doc. # 317, at 9.) First, none of the cases that Hill cites stands for the proposition that retroactivity jurisprudence comes into play when the issue is whether to apply an appellate ruling to litigants *in the very case* in which the ruling was announced. Further, even assuming that it is appropriate to turn to retroactivity jurisprudence in determining whether *Cooey* applies to any other intervenor-plaintiffs in the above-styled action, Hill's argument fails. The Sixth Circuit gave no indication that its ruling was to be applied only prospectively.

**2. Whether Hill's complaint is timely under the AEDPA's statute of limitations.**

In addition to arguing that *Cooey v. Strickland*'s statute of limitations ruling is not binding on him, Hill argues that if the statute of limitations set forth in the AEDPA is applicable, then his complaint is actually timely under three alternative accrual dates set forth in the AEDPA but not specifically addressed by the Sixth Circuit in *Cooey*. (Doc. # 317, at 12.) But contrary to Hill's assertion, the Sixth Circuit did not "adopt" the AEDPA's statute of limitations. Rather, the Sixth Circuit merely referenced the AEDPA, and the principles of comity and federalism underlying it, en route to announcing that method-of-execution claims begin to accrue upon conclusion of direct review in the state court or the expiration of time for seeking such review. *Cooey*, 479 F.3d at 421-22.

Further, even assuming that the Sixth Circuit "adopted" the AEDPA's statute of limitations--a finding this Court expressly rejects--this Court would still find that Hill's complaint is untimely under the alternative accrual dates set forth in §§ 2244(d)(1)(B)-(D). Hill asserts that his complaint is timely under § 2244(d)(1)(B), which gives a prisoner one year to file his habeas petition from the date on which the state removes an impediment to filing the petition; under § 2244(d)(1)(C), which gives a prisoner one year to file his habeas petition from the date on which a new constitutional right was recognized by the Supreme Court and made applicable to cases on collateral review; and under § 2244(d)(1)(D), which gives a prisoner one year to file his petition from the date on which the factual predicate of a prisoner's claim could have been discovered through due diligence. Each of Hill's arguments relies on assertions that this Court has already rejected.

Hill asserts that the state-created impediment to the filing of his method-of-execution--the state's failure to fully disclose all of the relevant information surrounding the execution protocol--was just recently removed via the *State v. Rivera* litigation in the Lorain County Common Pleas Court. Hill similarly asserts that he only recently discovered new facts supporting his method-of-execution claim when ODRC released information pursuant to the *State v. Rivera* litigation and Hill's expert, Dr. Heath, formed new opinions questioning the efficacy of Ohio's lethal injection protocol based on that information. But the Court has already determined--or, more precisely, the Sixth Circuit determined--that Cooey and all similarly-situated prisoners, including Hill, had sufficient information to file their method-of-execution claims at the very latest in December 2001. In arguing that his complaint is timely under § 2244(d)(1)(C), Hill asserts that Judge Burge's ruling in *State v. Rivera*, made applicable to Hill

via the habeas corpus principle that federal courts must defer to state court interpretations of state law, constitutes a new constitutional rule and that Hill therefore had two years from the date of that decision to file his complaint. This Court has already rejected the argument that Judge Burge's ruling in *State v. Rivera* has any force or effect here. Further, it tests the limits of credulity to suggest that Judge Burge's ruling amounts to a new constitutional right recognized by the Supreme Court and made applicable to cases on collateral review within the meaning of § 2244(d)(1)(C). Hill's arguments concerning the timeliness of his complaint under the alternative accrual dates set forth in the AEDPA's statute of limitations are unavailing.

### 3. Whether Hill is entitled to equitable tolling.

Hill also argues that he is entitled to equitable tolling. This Court has previously noted that the Sixth Circuit's decision in *Cooey* concluded in relevant part that Cooey had not timely filed his § 1983 complaint challenging multiple facets of the lethal injection protocol by which the State of Ohio intended to execute him. As noted, the Sixth Circuit reasoned that the two-year statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his injury has occurred. 479 F.3d at 416. The Sixth Circuit explained that "since the 'date' the lethal injection protocol is imposed is infeasible, it stands to reason that the next most appropriate accrual date should mirror that found in the AEDPA: upon conclusion of direct review in the state court or the expiration of time for seeking such review." *Id*. at 421-22. Thus, the appellate court held that such claims begin to accrue upon conclusion of direct review in the state courts *and* when the plaintiff knows or has reason to know about the act providing the basis of his injury. As to that latter condition, when the plaintiff knows or has reason to know about the act providing the basis of his injury, the Sixth Circuit offered several

possible dates: either when Ohio adopted lethal injection as a method of execution in 1993 or when Ohio made it the exclusive method of execution in 2001. *Id*. at 422. And as discussed earlier, the Sixth Circuit did not conclusively resolve that question because it concluded that "even under the later date, 2001, Cooey's claim exceeds the two-year statute of limitations deadline because his claim was not filed until December 8, 2004." *Id*.

Nothing in the Sixth Circuit's analysis contemplated equitable tolling of the sort Hill now advances or statutory tolling of the sort asserted by other plaintiffs in this litigation.[4] Although the Sixth Circuit turned to the AEDPA to inform–but not control–its analysis of the statute-of-limitations accrual date, the appellate court neither adopted the provisions of that statutory scheme nor indicated that the case law addressing that set of statutes applies to § 1983 method-of-execution claims of the sort advanced here. The logical leap that Hill makes in asserting that the equitable tolling provisions of the AEDPA apply in this litigation is therefore unfounded.

### 4. Whether Hill is entitled to conduct factual development.

The inapplicability of the AEDPA also defeats Hill's argument that he is entitled to conduct factual development or an evidentiary hearing on the statute of limitations issue. Hill attempts to parlay the July 8, 2008 *Biros* remand (Doc. # 278) into grounds supporting inferred permission for factual development. But Hill's interpretation of that remand reads more into the action of the appellate court than is there. The Sixth Circuit's remand targeted whether *Baze v.*

---

[4] The Court also notes that a number of plaintiffs have relied expressly on the continuing violations doctrine in an attempt to salvage their claims. But similar to any form of tolling, the Sixth Circuit in *Cooey* did not apply this doctrine to its construction of the statute of limitations. By holding that a dispositive limitations period existed, the court of appeals implicitly rejected that the lethal injection protocol dispute presents continuing recent violations that would save the claims of any plaintiff in this litigation, including Hill. The appellate court simply could not have reached the conclusion it did in *Cooey* without rejecting application of the doctrine.

*Rees*, 128 S. Ct. 1520 (2008), invalidates or otherwise proves dispositive of the preliminary injunction that this Court formerly granted to Kenneth Biros. It did not invalidate the *Cooey* statute of limitations and does not constitute on its face or implicitly instructions to conduct the factfinding Hill seeks on that issue. An inquiry under *Baze* focuses upon the merits of the § 1983 claims being advanced in this litigation, and the *Biros* remand permits this Court to reexamine the likelihood of success Biros has in light of the Supreme Court's recent decision.

### 5. Whether *Cooey v. Strickland* was wrongly decided.

This leaves Hill's final argument, that the Sixth Circuit panel behind the *Cooey* decision reached the wrong conclusion. The Court recognizes that this argument also cannot afford Hill the relief he seeks. To the extent that Hill raises once again his substantive arguments regarding the statute of limitations "for purposes of preservation for review" by the Sixth Circuit sitting en banc and by the Supreme Court (Doc. # 317, at 18), this Court again rejects those arguments for purposes of the record, for the reasons previously set forth in this litigation and in the *Cooey* decision.[5] To the extent that Hill's memorandum in opposition could be read as curiously suggesting that this Court disregard that binding appellate decision, this Court is neither able nor willing to do so. The Court can continue to disagree with the *Cooey* rationale, its conflating of § 1983 with the AEDPA, its reliance on protocol information being available upon public request when that has not always appeared to be the case, and its conclusion that "the recent changes [to

---

[5] The Court notes that the Sixth Circuit's decision in *Cooey* addresses explicitly or implicitly the arguments Hill advances. For example, the appellate court was fully aware of *Nelson v. Campbell*, 541 U.S. 627 (2004), while deciding *Cooey*, but tied the statute of limitations for Cooey's claim to 2001 at the latest. Hill's reliance on the 2004 *Nelson* as the turning point in lethal injection litigation therefore relies on a date and event that the Sixth Circuit did not regard as controlling the accrual date. *See Cooey*, 479 F.3d at 422.

the execution protocol] do not relate to Cooey's core complaints."[6] *Cooey*, 479 F.3d at 423. But this Court's opinion on those issues no longer matters. *Cf.* Doc. # 142, at 2, *Cooey v. Taft*, No. 06-4527, slip op. at 2 (6th Cir. Dec. 1, 2006) (Batchelder, J., dissenting) ("Judges may personally disagree with prior decisions–for good reasons or bad, or perhaps for no reason at all–but the integrity of the judicial system demands that courts of law adhere to those decisions or else provide a reasoned explanation for the refusal to do so."). *Cooey* is controlling precedent with a dispositive rationale that the undersigned must fully recognize, credit, and apply.

### III. Conclusion

For the foregoing reasons, this Court **GRANTS** Defendants' Motion to Dismiss. (Doc. # 279.)

**IT IS SO ORDERED**.

       /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[6] *Baze* reaffirms that more than just the amount of drugs matters in method-of-execution challenges; the methods employed and training involved are subject to analysis as well.